# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN P. REISH** | : | Civil Case No. _____ |
| 160 Dry Run Road | : | |
| Howard, PA 16841 | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | **JURY TRIAL DEMANDED** |
| | : | |
| **THE PENNSYLVANIA STATE UNIVERSITY** | : | |
| and | : | |
| GREGORY ANDERSEN, AND | : | |
| SUSAN RUTAN, individually and in their | : | |
| official capacities, | : | |
| 328 Boucke Building | : | |
| University Park, PA 16802 | : | *Electronically Filed* |
| | : | |
| Defendants. | : | |

---

## COMPLAINT

Plaintiff John P. Reish, ("Plaintiff"), by way of a civil action arising under the Age

Discrimination in Employment Act, the Pennsylvania Human Relations Act, and the

Pennsylvania Wage Payment and Collection Law, brings this Complaint against Defendants the

Pennsylvania State University ("Penn State"), Gregory Andersen, and Susan Rutan, and, in

support thereof, hereby avers as follows:

## JURISDICTION

1.      This action is brought under the Age Discrimination in Employment Act of 1967, as

amended (the "ADEA"), 29 U.S.C. §§ 621 et seq.  Certain Counts of the Complaint are

based on 29 U.S.C. §§ 623(a)(1) and (f).  Jurisdiction is based on 29 U.S.C. § 626(c) and

1

28 U.S.C. § 1331.  Plaintiff seeks relief pursuant to 29 U.S.C. § 626(b) and (c)(1).

2.     Certain Counts of this Complaint are brought under the Pennsylvania Human Relations

Act ("PHRA"), 43 P.S. § 951 et seq., and the Pennsylvania Wage Payment and

Collection Law ("WPCL"), 43 P.S. § 260.3 et seq.  Jurisdiction is based on 28 U.S.C. §

1367(a).

3.     This Court has jurisdiction over Plaintiff's state law claims pursuant to its supplemental

jurisdiction as codified at 28 U.S.C. § 1367.

4.     Plaintiff has exhausted all administrative remedied and taken all other necessary steps to

bring the instant action in this Court, having filed a timely charge of age discrimination in

employment with the Equal Opportunity Commission ("EEOC") (EEOC Charge No.

530-2007-01346) and with the Pennsylvania Human Relations Commission ("PHRC")

(PHRC Case No. 200705122), and having received the requisite rights to bring the

instant action before this Court.

## VENUE

5.     Venue lies in the United States District Court for the Middle District of Pennsylvania

under 28 U.S.C. § 1391(b) and (c) because Defendants reside in and/or regularly conduct

business within this jurisdiction, and because events at issue occurred in this jurisdiction.

## NATURE OF PROCEEDING

6.     This is a proceeding for (a) back pay; (b) front pay; (c) liquidated damages; (d)

declaratory and injunctive relief, requiring, *inter alia*, that Defendants restore the

Plaintiff to his prior post; (e) lost pension, retirement benefits, and promotion

opportunities; (f) compensatory damages under applicable state law; (g) reasonable

attorney's fees and costs; and (h) such other relief as may be necessary to secure to

Plaintiff the right hereafter to be free of retaliation and employment discrimination on account of age.

## **PARTIES**

7.     Defendant Penn State is a state-related educational institution with a principal place of business and/or offices located at 328 Boucke Building, University Park, PA, employing more than 15,000 employees at all times relevant hereto.

8.     At all relevant times, Penn State was an employer within the meaning of all applicable laws and regulations and Defendants were subject to the coverage of all applicable laws and regulations.

9.     Defendant Gregory Andersen is an adult individual who works in a supervisory capacity as Manager of Area Services for Penn State, and, upon information and belief, resides in the Commonwealth of Pennsylvania.

10.    Defendant Susan Rutan is an adult individual who works in a supervisory capacity for Penn State as Manager of Human Resources, and, upon information and belief, resides in the Commonwealth of Pennsylvania.

11.    Plaintiff is an adult individual residing in Howard, Pennsylvania.

12.    Plaintiff's date of birth is February 8, 1956.

13.    On July 19, 2006, at the time of the adverse employment actions as more fully described herein, Plaintiff was age 50.

14.    At all relevant times, Plaintiff has been eligible for and covered by the protections afforded by all relevant statutes and regulations.

## FACTUAL BACKGROUND

15.   Plaintiff began working for Penn State in or about November 8, 1974, and held various
       technical service positions until 1998, when he accepted a staff position.

16.   In 2002, Plaintiff was promoted to Supervisor, Area Services for Area 5.

17.   At all times relevant to this action, Plaintiff worked in a supervisory capacity, and had a
       managerial role over other Penn State employees, including William Sotter.

18.   Mr. Sotter worked the third shift in janitorial district 53 under PSU's Office of Physical
       Plant ("OPP"), until the termination of his employment on June 22, 2006.

19.   Mr. Sotter was 64 years old when Penn State terminated his employment.

20.   In the last several years, Defendants began hiring employees who were substantially
       younger than both Plaintiff and Mr. Sotter as part of a calculated campaign to purge OPP
       of older workers.

21.   Since approximately 2004, Defendant Andersen, who is substantially younger than
       Plaintiff, has subjected Plaintiff and other older workers to harassment and otherwise
       made Plaintiff's work environment hostile and unreasonably difficult in comparison to
       that of similarly-situated younger individuals, including in retaliation for Plaintiff's
       objection to Defendants' unlawful scheme.

22.   Plaintiff was aware that Defendants considered Mr. Sotter "too old" to work at Penn
       State.

23.   In or about March 2005, Defendant Andersen told Plaintiff that Mr. Sotter was too old to
       his job and that it was time for him to move on.  He even suggested that Mr. Sotter
       needed an HR 78.

24.   Because Plaintiff did not agree with and act upon Defendant Andersen's assessment of

4

Mr. Sotter, Plaintiff himself became a target of Defendant Andersen's discriminatory actions.

25. Defendant Andersen conveyed his clear intentions to discharge Mr. Sotter from his employment with Penn State because Andersen considered Mr. Sotter to be "too old".

26. Defendant Andersen further conveyed his intentions to cover-up his discriminatory reason for by framing the employment termination as an "HR 78" – Penn State's progressive discipline policy entitled "Staff Employee Failure to Meet Acceptable Standards of Performance".

27. Defendants routinely misuse HR 78 and other Penn State employment-related policies to guise their discriminatory and/or retaliatory intentions while making adverse employment decisions.

28. Sometime in June 2006, Plaintiff became aware of Defendants' intention to in fact carry out their termination of Mr. Sotter's employment for reasons motivated by unlawful age discrimination.

29. Plaintiff advised Mr. Sotter of the discriminatory comment made by Defendant Andersen, and further suggested that Mr. Sotter explore his rights under the law.

30. On June 22, 2006, Mr. Sotter was called into a meeting with Defendant Andersen and Defendant Rutan, wherein Defendants formally terminated Mr. Sotter's employment.

31. At the meeting, Mr. Sotter advised Defendants that he was aware of the discriminatory statement made by Defendant Andersen, and was further aware of the discriminatory reasons motivating their decision to terminate his employment.

32. Mr. Sotter conveyed his intention to commence a claim for age discrimination, and indeed did commence such a claim shortly after the date of his discharge from

5

employment.

33.   Mr. Sotter further identified Plaintiff as the source of some of his information concerning his allegations of age discrimination.

34.   Plaintiff's engagement in protected activity as described above, and his unwillingness to support the discriminatory employment actions taken by Defendants, caused Defendants to retaliate against Plaintiff.

35.   The retaliation was further motivated, at least in part, by Defendants' need to discredit Plaintiff in the wake of his anticipated role as a witness supporting Mr. Sotter's claims of discrimination and disparate treatment.

36.   Immediately after accomplishing the termination of Mr. Sotter's employment on May 22, 2006, Defendants conspired in a scheme to retaliate against Plaintiff, and to thoroughly discredit him.

37.   For nearly a month, Defendants examined Plaintiff's employment record, hoping to find any evidence of inadequate job performance.

38.   When they failed to find such evidence, Defendants simply manufactured false evidence against the Plaintiff, going so far as to accuse him of "misuse of university funds" – a deliberately false accusation that cast Plaintiff as a thief and a liar.

39.   Defendants confronted Plaintiff with this false evidence on July 19, 2006.

40.   Unbeknownst to Plaintiff, Defendants scheduled an HR 78 disciplinary meeting, and had planned to confront Plaintiff with volumes of false, manufactured evidence against him.

41.   Defendants' goal in this meeting was not to get at the truth concerning the allegations of misconduct that they levied against Plaintiff, but to confuse and intimidate him.

42.   Defendants scheduled the meeting, but deliberately failed to advise Plaintiff about the

subject matter of the meeting so that Plaintiff could neither prepare for it, nor be able to adequately defend himself during it.

43.    To further confuse and unsettle the Plaintiff, Defendants – on the morning of July 19, 2006 – twice changed the time and location of the scheduled meeting, forcing Plaintiff to rush from one location to another.

44.    The meeting began at approximately 10:00 AM and lasted until 3:45 PM, with little or no breaks.

45.    Throughout the course of the nearly six hour interrogation, Defendants Rutan and Andersen accused Plaintiff of theft, misappropriation of funds, and other acts of dishonesty.

46.    Plaintiff repeatedly requested the opportunity to present Defendants records from his office which would exonerate Plaintiff from the false accusations being levied against him.

47.    Defendants refused Plaintiff access to his records, and insisted that he provide details concerning various expenditures from memory.

48.    When Plaintiff was unable to recall specific details without access to his notes and records, Defendants Rutan and Andersen accused him of lying, and repeatedly threatened Plaintiff with the prospect that his 32-year career at Penn State would end with the termination of his employment.

49.    When the meeting finally concluded, Plaintiff felt completely broken.

50.    Defendants suspended Plaintiff without pay, "pending further investigation."

51.    Plaintiff believed that he was being fired.

52.    Defendants never advised Plaintiff why he was being suspended without pay, or why he

7

was being investigated.

53. Plaintiff was effectively suspended without pay from July 19, 2006 through August 25, 2006.

54. Defendants demanded that Plaintiff relinquish his university keys, cell phone, parking pass, and radio.

55. Defendant denied Plaintiff access to his computer, which contained evidence to both exonerate him from false accusations of misconduct, and to support claims of unlawful employment discrimination.

56. Defendants prohibited Plaintiff from accessing his Supervisory Assigned Area and his office, where he kept personal items such as family photographs.

57. Many such personal items, including $1,000 in cash, were lost and never recovered by Plaintiff after Defendants barred him from entry to his former office space.

58. Plaintiff advised Defendants that he intended to report the items stolen.

59. Plaintiff contacted Officer Donald Hazel of the Penn State Police to report the theft of his personal property.

60. After Plaintiff filed his report, Defendant Rutan requested that Plaintiff's current supervisor Mark Bodenschatz issue another HR 78 letter against Plaintiff, for supposedly providing Officer Donald Hazel with details relevant to the allegations of theft.

61. Defendants further retaliated against Plaintiff by prohibiting his access to any Area 5 buildings, and reassigning him to Area 1 buildings.

62. Throughout their investigation, Defendants never found any evidence to support their false allegations of "major acts of misconduct" – because Plaintiff never engaged in any such acts.

63. Nevertheless, by misrepresenting certain facts and utterly failing to offer Plaintiff an opportunity to rebut those misrepresentations in a fair and impartial forum, Defendants contrived a set of false accusations against Plaintiff.

64. Soon after his suspension, Plaintiff filed a grievance in accordance with Penn State's policies.

65. Knowing that they could not justify the disciplinary action they took against the Plaintiff, Defendants devised a scheme to compel Plaintiff to withdraw his grievance or face discharge.

66. On or about August 1, 2006, Plaintiff was advised that he had been found to be in violation of certain unspecified Penn State policies.

67. Fully aware that Plaintiff could not afford to lose his job after 32-years of loyal, diligent service, Defendants issued an ultimatum to Plaintiff requiring him to choose one of three unsavory options: 1) resign; 2) accept termination of employment; or 3) accept a demotion and reassignment, which option would require him to withdraw his grievance.

68. Plaintiff needs his job, so he accepted a demotion and reassignment, hoping to vindicate his rights in this Court of law.

69. Upon his return to work, Plaintiff was demoted and reassigned to the position of Construction Quality Representative.

70. To further veil their unlawful behavior, Defendants compelled Plaintiff to account for the days in July when he was suspended from work by charging Plaintiff with unused vacation days.  In essence, Plaintiff was forced to use his accrued vacation days to cover-up Defendants' unlawful and discriminatory behavior against the Plaintiff.

71. Throughout the months of July and August, Plaintiff repeatedly requested that

Defendants provide him with some justification for their disciplinary actions against Plaintiff.

72.  On or about September 13, 2006, Plaintiff was finally presented with memo purporting to detail the evidence supporting his suspension and demotion.

73.  The memo vaguely references some violations of Penn State policies in an overtly redundant fashion, and even includes the accusation of "[f]ailure to communication [sic] properly by deception, evasiveness, or lying" – clearly referencing the ageist statement made by Defendant Andersen about Mr. Sotter being "too old" to work at Penn State.

74.  Plaintiff was singled-out for this type of discipline, and treated far more harshly than other Penn State employees accused of far worse conduct.

75.  Defendants have continued to retaliate and discriminate against Plaintiff since the filing of his charge of discrimination, including by marginalizing him at work, and treating him harshly to force his early retirement.

76.  Defendants' actions were intentional, willful, malicious and outrageous, and/or conducted with reckless indifference to Plaintiff's rights and Defendants' obligations.

## COUNT I
## AGE DISCRIMINATION UNDER THE ADEA

77.     Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

78.     The ADEA prohibits an employer from taking adverse employment action against any

        individual because of age.

79.     Defendants' conduct, including as described herein, violated the ADEA.

80.     As a result of Defendants' unlawful conduct, Plaintiff was injured and suffered damages

        for which he seeks redress in this action, including without limitation, monetary losses,

        pain and suffering, humiliation and damage to his reputation.

## COUNT II
## AGE DISCRIMINATION UNDER THE PHRA AGAINST PENN STATE

81.     Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

82.     The actions described above also constitute unlawful discriminatory practices in violation

        of PHRA, 43 P.S. § 955(a).

83.     Plaintiff is entitled to the relief authorized by PHRA, 43 P.S. § 962(c)(3).

## COUNT III
## AGE DISCRIMINATION UNDER THE PHRA AGAINST INDIVIDUAL DEFENDANTS

84.     Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

85.     Defendants Andersen and Rutan are supervisory employees subject to liability for aiding

        and abetting under the PHRA.

86.     Defendants Andersen and Rutan violated the PHRA by aiding, abetting, inciting,

        compelling and/or coercing unlawful discriminatory practices under the PHRA, including

11

as described herein.

87.   As a result of the conduct of Defendants Andersen and Rutan, Plaintiff has been injured and suffered damages for which he seeks redress in this action, including as set forth herein.

## COUNT IV
## RETALIATION

88.   Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

89.   Defendants' conduct, included as described herein, constitutes unlawful retaliation, including in violation of the ADEA and the PHRA.

90.   As a result of such conduct, the Plaintiff has been injured and suffered damages for which he seeks redress in this action, including as set forth herein.

## COUNT V
## UNPAID WAGES

91.   Plaintiff incorporates the preceding paragraphs by reference as if fully stated herein.

92.   Defendants failed to pay certain wages in violation of the WPCL and the agreement of the parties, including payment for time worked, and improperly charged Plaintiff for vacation time to cover-up the unlawful, and unjustifiable suspension of the Plaintiff, including as discussed above.

93.   Defendants' conduct amounts to a violation of the WPCL.

94.   Defendants Andersen and Rutan were at relevant times the active decision makers with regard to Defendants' failure to pay Plaintiff under the WPCL.

95.   Defendants' conduct was intentional, willful, wanton, knowing, outrageous, and done with reckless disregard, especially given Plaintiff's long tenure as an employee of Defendant Penn State.

## <u>PRAYER FOR RELIEF</u>

**WHEREFORE,** Plaintiff respectfully requests the Court to enter a judgment in favor of Plaintiff and against the Defendants, as follows:

A.  That the Court enter a Judgment declaring that Defendants violated 29 U.S.C. § 623(a)(1) and (f) and has done so willfully;

B.  That the Court enter a Judgment declaring that Defendants violated the PHRA, 43 P.S. § 955(a);

C.  That the Court enter an injunction permanently restraining and enjoining Defendants, from engaging in or continuing to engage in any employment acts, policies, practices or procedures which may discriminate and/or retaliate, in purpose and/or impact, against any present or former employee of Penn State on the basis of said employee's age;

D.  That the Court enter a judgment awarding against Defendants and in favor of the Plaintiff actual damages for loss of revenue including back pay, future earnings, pension adjustments, liquidated damages, prejudgment interest, and all the fringe benefits to which Plaintiff is entitled, in amounts to be proven at trial;

E.  That the Court enter a judgment awarding Plaintiff costs and reasonable attorney's fees against Defendants pursuant to 29 U.S.C. §§ 626(b) and 216(b);

F.  That the Court enter a judgment awarding Plaintiff punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendants for their willful, deliberate, malicious and outrageous conduct and to deter them and/or other persons or entities from engaging in such misconduct in the future; and

13

G.  Such other and further relief as may be just and appropriate under the circumstances.


**PLAINTIFF HEREBY DEMANDS A TRIAL BY JURY.**


/s *Garen Meguerian*

Garen Meguerian, Attorney at Law, LLC
Garen Meguerian, Esquire
PA Attorney ID# 78588
21 Industrial Boulevard
Suite 201
Paoli, PA 19301
(610) 590-2176

Attorney for Plaintiff

DATED: July 3, 2009

14