# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JOHN REISH,** | : | **Civil No. 4:09-CV-1273** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Jones)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| **PENNSYLVANIA STATE** | : | |
| **UNIVERSITY, et al.,** | : | |
| | : | |
| **Defendants** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This is an employment discrimination action brought by John Reish against the

Pennsylvania State University and two individual defendants, Susan Rutan and Greg

Andersen. (Doc. 1)  In his complaint Reish alleges that the defendants engaged in acts

of age discrimination against him in violation of the Age Discrimination in

Employment Act, 29 U.S.C. §621, and the Pennsylvania Human Relations Act, 43

Pa.C.S. §951. (Id.)  With respect to these allegations the undisputed facts[1] are as

---

[1]The background to this action is extensive and involves a number of individuals, many of whom are not party to this action.  Although there are a number of facts that various defendants have asserted that plaintiff has purported to dispute, where we have found insufficient evidence to actually create a dispute regarding the asserted fact, we have accepted it as true for purposes of reciting the background of this case.  Thus, in setting forth the factual background of this action, and regarding the pending motions, we have presented facts that are

follows:

### A.    The Plaintiff's Background and Employment History

The plaintiff, John Reish, was born in 1956, (Doc. 1), began working for Penn State in 1974, and was continuously employed by Penn State for more than 30 years. (Id.)  In 2002, Mr. Reish accepted a position as a Supervisor of Area Services, a division within the Office of Physical Plant.  He held this position until August 2006. (Id.)  Mr. Reish's supervisor in Penn State's Area Services department was Greg Andersen, who has been employed as Manager of Area Services since 2000. (Doc. 71-1 pp. 1-2)

The Area Services department provides for small-scale, day-to-day routine maintenance and repair to Penn State's buildings and facilities. (Id.)  As of 2006, the Penn State University Park campus was divided into five discrete areas, each of which was served by its own Area Services department staff.  As a Supervisor of Area Services, Mr. Reish was responsible for the routine maintenance and upkeep of the

---

alleged in the complaint to the extent there appears to be no dispute regarding their veracity.  It is emphasized that certain factual averments from plaintiff's complaint have been included only to provide factual context, and when used have been viewed in the light most favorable to plaintiff.  Additionally, we have reviewed the defendants' respective statements of undisputed facts, and of plaintiff's competing counterstatement, in preparing this background.  In doing so, we have incorporated facts to the extent that a fact has been admitted or otherwise has not been adequately disputed by citation to admissible evidence in the record.

buildings and grounds within a geographical region of the University Park campus designated as Area 5. (Doc. 71-1 p. 2)

### B.   Reish's Working Relationship With Area Services Manager Andersen

The matters at issue in this case largely arise out of Reish's working relationship with his immediate supervisor, Greg Andersen.   Therefore, it is appropriate to briefly consider the background of that working relationship.   The plaintiff, John Reish, and defendant, Greg Andersen, worked together for approximately four years before Reish was transferred from the Area Services department.   During his tenure in this department, between 2002 and 2006,   Reish received a series of annual written performance evaluations from  Andersen. (Doc. 71-1 p. 4).   From Andersen's perspective these evaluations generally identified Mr. Reish as a satisfactory, but not outstanding, employee.   Thus, in 2002 and 2003, Mr. Andersen rated Mr. Reish as a "4" on a one to five scale.   In 2004, 2005 and 2006, Mr. Andersen rated Mr. Reish as a "3." (Id.)

While he rated Reish as an acceptable employee, Andersen continually counseled Reish to improve his job performance in several areas.   Thus, in 2004, while Andersen assessed  Reish's 2003-2004 performance as a "3" on his annual evaluation, he also documented areas for improvement for Reish including budget

3

management, work order expenses and communications skills. (Doc. 71-1 p. 4, Andersen Aff., ¶ 9; Doc. 71-19 p. 23, Rutan Aff., ¶95).  Similarly, Reish's 2005 evaluation rated his performance as a "3" but once again documented concerns about work order management, budget management and communications skills. (Id.)  In addition, Penn State officials documented other workplace counseling sessions with Reish.  Thus, Reish was given a memo dated March 25,2005, outlining performance concerns discussed with him on February 28, 2005 and March 9, 2005. (Doc. 71-19 pp. 22-23, Rutan Aff., ¶94; Doc. 71-1 p. 4, Andersen Aff. ¶11)  On March 15,2006, defendant Andersen met with Reish and discussed at length concerns about communication issues, excessive tool purchases, excessive inventory, exceeding work order limits and other concerns. (Doc. 71-1 p. 4, Andersen Aff., ¶12)

From Reish's perspective, prior to 2006 the only complaint which he articulates in this lawsuit regarding his supervisor, Andersen, involved an episode in March of 2005, in which Reish contends that Andersen suggested that a custodial employee supervised by Reish, William Sotter, was too old for his job and that it was time for Sotter to move on to another job. (Doc. 1, ¶23)  Reish alleges that his refusal to discharge Sotter coupled with his decision to report Andersen's alleged remark to Sotter, in turn, led to acts of discrimination and retaliation against him some 18 months later. (Id., ¶¶25-27.)

4

**C.**     **Job Performance Issues Relations to Reish– 2005 and 2006**

Beginning in 2005, and continuing through the Fall of 2006, Reish's supervisors conducted several meetings with Reish relating to job performance issues in Reish's role as a supervisor in the Area Services department.   These job performance issues fell into three broad categories.

First, because the Area Services department only provided for small-scale, day to day routine maintenance and repair to Penn State's buildings and facilities Area Services tasks typically were limited to what were referred to as "Service calls," tasks that involved 16 hours or less in labor, cost $3,000.00 or less in material expenses, and required three or fewer different types of trades, such as plumbing, electrical, or carpentry.   Under Penn State's policy, projects which exceeded the scope of "service calls", were to be assigned to other maintenance staff rather than Area Services.

During his tenure as a supervisor in Area Services, Reish had persistent difficulties complying with this Penn State policy.   Indeed, by July 2006, of 20 supervisors under Andersen's direction, Reish was the most consistent violator of the service call limits policy. (Doc. ¶53) Reish's performance problems in this area were significant.   Reish had four times as many excessive service calls as the next highest supervisor; (id.), and personally accounted for 32% of all service call hour violations despite the fact that there were a total of 19 other supervisors in Service Areas. (Id.)

As a result, Reish was responsible for 54% of all excessive material cost work orders. (Id.).

A second area of concern related to purchases made by Reish while serving as a Supervisor in Area Services.  Mr. Andersen and other managers instructed Area Supervisors not to buy shop parts or inventory using customer work orders.  (Doc. 71-1 p. 14, Andersen Aff., ¶¶51-52)  Furthermore, Area Supervisors like Reish were not supposed to make purchases of items on work orders that were unrelated to the scope of their work.  (Doc. 71-1 pp. 7-8, 14, Andersen Aff., ¶¶ 26, 51)  Finally, Area Supervisors were forbidden from using building maintenance funds for Capital expenditures.  (Doc. 71-1 pp. 7-8, Andersen Aff., ¶¶25-26)  Despite this guidance, Reish persisted in  purchasing shop parts on work orders, purchased unrelated items on work orders and used building maintenance funds to make capital expenditures. (Doc. 71-1 p. 14, Andersen Aff.,¶¶51-54; Doc. 71-43 p. 11, Reish Dep. I, pp. 127-8)

Finally, Penn State officials encountered instances in which they concluded that Reish had undermined University operational initiatives, and been less than candid with his University supervisors.  These issues arose in the context of Reish's service as a member of a process action team (PAT Team) whose goal was to create storeroom operations in Area Services maintenance shops where all materials would be fully inventoried, and effectively regulated, controlled and managed to increase

efficiency and to get a handle on costs. (Doc. 71-1 p. 9, Andersen Aff., ¶28)  The PAT team met from August 2004 through the time of Reish's discipline in July 2006, undertaking a project that was known as the Area Stores Initiative. (Id.)

As part of this initiative, the plan was to reduce, consolidate and organize the vast inventory of parts and materials that existed throughout Area Services.  Once done, the reduced quantity of items would be cataloged in a manner that would track inventory in and out of a newly-created storeroom.  The purpose of this effort was to consolidate and organize parts and materials within the confines of the Area 5 shop. (Id.)  In early 2006, Andersen observed much of the previous inventory to be gone and no longer present in the Area 5 shop.  Reish assured Andersen that these items had been sent to Penn State's Salvage & Surplus department, which was a method agreed upon for reducing his inventory.  (Id.)  However, Reish could not document all of the inventory items that he claimed had been sent to Salvage. (Id.)

In fact, Reish had not salvaged these excess items as he had claimed in conversations with his supervisor.  Instead, Reish had instructed employees to move large amounts of inventory to remote storage locations in Area 5, contrary to the objective of the Area Stores Initiative. (Id.) When confronted on June 19, 2006, regarding this conduct, Reish admitted he had relocated most of the inventory to remote locations within Area 5, incurring hundreds of hours of labor charges to move

inventory in an unauthorized manner and to unauthorized locations. (Id.)

Reish's job performance issues in these fields had been the topics of an on-going dialogue between Reish and his supervisors for several years. Thus, in 2004, while Andersen rated  Reish's performance as a "3" he also documented areas for improvement for Reish, including budget management, work order expenses and communications skills. (Doc. 71-1 p. 4, Andersen Aff., ¶ 9; Doc. 71-19 p. 23, Rutan Aff., ¶ 95)  Similarly, Reish's 2005 evlauation rated his perfoamnce as a "3" but once again documented concerns about work order management, budget management and communications skills. (Id.)  Andersen echoed these concerns in other workplace counseling session with Reish in the year preceding then July 2006 disciplinary action, including a memo dated March 25, 2005 outlining  performance concerns discussed on February 28, 2005 and March 9, 2005, (Doc. 71-19 pp. 22-23, Rutan Aff., ¶94; Doc. 71-1 p. 4, Andersen Aff. ¶11), and a March 15, 2006, meeting concerning about communication issues, excessive tool purchases, excessive inventory, exceeding work order limits and other concerns. (Doc. 71-1 p. 4, Andersen Aff., ¶12)

For his part, Reish seems to acknowledge a number of these job performance issues.  Thus, Reish has admitted that he used building maintenance funds to buy a food science water softener, a capital expenditure, and acknowledged that building

maintenance funds are not supposed to be used for capital expenditures. (Doc. 71-43 p. 12, Reish Dep. I, p. 130)  Reish also acknowledged that he made purchases on work orders that would be inappropriate under Penn State policies. (Doc. 71-43 p. 12, Reish Dep. I, p. 132)

### D.    Disciplinary Proceedings Against Reish: July - September, 2006

In June of 2006, Reish's supervisors discovered that Reish had not been candid with them regarding his compliance with University policies.   Following this discovery, in the summer of 2006 Penn State officials instituted disciplinary proceedings against Reish.  This process began on June 19, 2006, when defendants Andersen, Susan Rutan and others met and determined that HR-78 disciplinary proceedings would be initiated relating to Mr. Reish. (Doc. 71-19 pp. 6-7, Rutan Aff., ¶¶ 17-19; Doc. 71-1 p. 22, Andersen Aff., ¶¶76-78 )

For his part, Reish has attempted to allege that these disciplinary proceedings coincided with the submission of age discrimination claims by another Penn State employee, William Sotter.   However, Reish presents a strained and implausible chronology in support of this claim.  According to Reish, 18 months earlier in March of 2005, Andersen suggested that Sotter, a custodial employee supervised by Reish, was too old for his job and that it was time for Sotter to move on to another job. (Doc. 1, ¶23)  Reish contends that he reported this statement to Sotter, and suggests that the

discipline initiated against him was, therefore, pretextual and retaliatory for his reporting these statements by Anderson to Sotter, something that Reish states Penn State officials learned on or about June 29, 2006. (Id., ¶¶25-27; Doc. 90-2, p.1) The difficulty with this claim lies in the details of this chronology.  Under Reish's proffered chronology, the allegedly retaliatory disciplinary action, which began on June 19, 2006, actually *pre-dates* the event which Reish alleges triggered this retaliation, the late June 2006 disclosure of Sotter's complaints to Penn State officials.

On July 19, 2006, disciplinary proceedings against Reish were conducted during a  meeting between Reish, Andersen, Rutan and another Penn State official, Ken Korbich. (Doc. 71-19 p. 8, Rutan Aff., ¶24)  During this session, Andersen and Rutan both questioned Reish at length regarding a number of concerns relating to Reish's performance. (Id.)   Following this meeting, Reish was placed on administrative leave without pay pending the HR-78 proceedings beginning July 20, 2006. (Doc. 71-19 p. 8, Rutan Aff., ¶ 25)  He remained on disciplinary suspension without pay from August 1 through August 25 ,2006, (id., ¶¶ 32-33), and did not work at Penn State between July 20, 2006 and August 27,2006, (id., ¶38).

In August, 2006 Mr. Reish accepted a position as a Construction Quality Representative (CQR) with Penn State's Office of Physical Plant's division of

Construction Services. (Id., ¶ 32.)  This new position represented a demotion for Reish, (id., ¶30), and entailed job duties that required neither budgetary management nor supervision of personnel, two areas previously deemed problematic for Reish by Penn State officials. (Id., ¶¶1, 30.)  Reish was told by defendant Rutan that if he did not accept the offered position, or resign, that Penn State would pursue summary dismissal proceedings against him. (Id., ¶31.)  Reish initially pursued a grievance of this matter in August of 2006 but on September 8, 2006, Penn State offered to settle Reish's grievance by allowing him to use accrued vacation time to receive pay for the period of administrative leave without pay. (Id., ¶34.)  On September 8, 2006,  Reish accepted the offer to use vacation time to receive pay for the period of administrative leave without pay in exchange for his agreement to withdraw his grievance. (Id.)

Reish then held this position from August 28, 2006, until he retired from employment with Penn State on February 28, 2011.  (Doc. 71-19 p. 12, Rutan Aff., ¶ 41; Doc. 71-44 p. 3, Reish Dep. II, p. 12)  At the time of his retirement, Reish received full payment for all eligible accrued benefits, including vacation pay, consistent with Penn State's policies and procedures. (Doc. 71-19 p. 12, Rutan Aff., ¶42)  Reish was not denied any benefits, including vacation pay, in connection with the discipline he received in 2006. (Doc. 71-19 p. 12, Rutan Aff.,¶43)

**D.**     **EEOC Proceedings and This Complaint**

After settling his grievance with Penn State in September 2006, Reish took no action for fifteen months, until he filed a charge of discrimination on December 21, 2007, with the EEOC. (Doc. 71-44 p. 6, Reish Dep. II, pp. 179-180)  The Notice of Charge of Discrimination from the EEOC to Penn State was dated January 31, 2008, and was received by Penn State after its mailing. (Doc. 71-19 p. 23, Rutan Aff.,¶99) The EEOC subsequently dismissed Reish's administrative complaint on April 22, 2009. (Doc. 71-19 p. 23, Rutan Aff., ¶100)

Reish then filed this lawsuit ninety-three days later, on July 24,2009.  (Doc. 1) Reish's age discrimination lawsuit focused exclusively upon his 2006 demotion.  In his complaint, (Doc. 1), and in subsequent discovery depositions, Reish stated that he believed that he was a victim of discrimination, harassment or retaliation because of his demotion in July 2006, and asserted that he was not aware of any other acts of retaliation to which he has been subjected.  (Doc. 71-43 p. 6, Reish Dep. I, pp.93-94)

While making these assertions, Reish has also acknowledged a number of facts which seem to contradict his claims, stating that prior to July 2006 he has not observed or been told that the defendants ever discriminated against anybody based on their age, (Doc. 71-43 p. 3, Reish Dep. I, pp. 39-40, 108); acknowledging that he does not believe that Penn State generally discriminates against people based on their

age, (Doc. 71-43 p. 5, Reish Dep. I, p. 60); admitting that he was not aware of any calculated campaign by Penn State to hire younger employees and purge itself of older workers, (Doc. 71-43 p. 6, Reish Dep. I, p. 96); conceding that he was not aware of any employees who are substantially younger than him being hired in the Office of Physical Plant, (Doc. 71-43 pp. 6-7, Reish Dep. I, pp. 96-97); and stating that he has no other evidence suggesting that Penn State employee discipline procedures have ever been sued for a discriminatory purpose.  (Doc. 71-43 p. 8, Reish Dep. I, p. 102)

As discovery proceeded in this case, Reish's counsel moved to withdraw, citing irreconciable differences with his client.  (Doc. 17)  That motion was granted, and Reish continued to proceed with this litigation, acting *pro se*.  Following extensive pre-trial proceedings and discovery, the defendants moved for summary judgment on plaintiff's discrimination and retaliation claims.  (Doc.70)   That motion has been fully briefed by the parties, and is now ripe for disposition.  (Docs. 70-75, 78-81,84-91)

For the reasons explained below, we recommend that the motion be granted.

## II.   Discussion

### A.   Rule 56–The Legal Standard

The defendants have moved for summary judgment pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, which provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(c) Through summary adjudication a court is empowered to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010).   The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).   A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party.  Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec.

& Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate.  Celotex, 477 U.S. at 322.  Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249.   There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist.  Further, "only evidence which is admissible at trial may be considered

in ruling on a motion for summary judgment." <u>Countryside Oil Co., Inc. v. Travelers</u> <u>Ins. Co.</u>, 928 F.Supp. 474, 482 (D.N.J.1995). This rule applies with particular force to parties who attempt to rely upon hearsay statements to establish material issues of fact which would preclude summary judgment. With respect to such claims, it is well-settled that: "In this circuit, hearsay statements can be considered on a motion for summary judgment [only] if they are capable of admission at trial." <u>Shelton v.</u> <u>University of Medicine & Dentistry of N.J.</u>, 223 F.3d 220, 223, n. 2 (3d Cir. 2000), citing, <u>Stelwagon Mfg. V. Tarmac Roofing, Suys., Inc.</u>, 63 F.3d 1267, 1275, n.17 (3d Cir. 1995). In this regard it has been aptly observed that:

> It is clear that when considering a motion for summary judgment, a court may only consider evidence which is admissible at trial, and that a party can not rely on hearsay evidence when opposing a motion for summary judgment. <u>See</u> <u>Buttice v. G.D. Searle & Co.</u>, 938 F.Supp. 561 (E.D.Mo.1996). Additionally, a party must respond to a hearsay objection by demonstrating that the material would be admissible at trial under an exception to hearsay rule, or that the material is not hearsay. <u>See</u> <u>Burgess v. Allstate Ins. Co.</u>, 334 F.Supp.2d 1351 (N.D.Ga.2003). The mere possibility that a hearsay statement will be admissible at trial, does not permit its consideration at the summary judgment stage. <u>Henry</u> <u>v. Colonial Baking Co. of Dothan</u>, 952 F.Supp. 744 (M.D.Ala.1996).

<u>Bouriez v. Carnegie Mellon University</u>, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005). Thus, a party may not rely upon inadmissible hearsay assertions to avoid summary judgment. Therefore, where a party simply presents inadmissible hearsay declarations in an attempt to establish a disputed material issue

of fact, courts have typically rebuffed these efforts and held instead that summary judgment is appropriate.  See, e.g., Synthes v. Globus Medical, Inc., No. 04-1235, 2007 WL 2043184 (E.D.Pa. July 12, 2007); Bouriez v. Carnegie Mellon University, No. 02-2104, 2005 WL 2106582,* 9 (W.D.Pa. Aug. 26, 2005); Carpet Group International v. Oriental Rug Importers Association, Inc., 256 F.Supp.2d 249 (D.N.J. 2003).

Similarly, it is well-settled that:  "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted).  Thus, "[w]hen a motion for summary judgment is made and supported . . ., an adverse party may not rest upon mere allegations or denial." Fireman's Ins. Co. Of Newark NJ v. DuFresne, 676 F.2d 965, 968 (3d Cir. 1982), see Sunshine Books, Ltd. v. Temple University, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." Lockhart v. Hoenstine, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." Gans v. Mundy, 762 F.2d 338, 341 (3d Cir. 1985)(citing Ness v. Marshall, 660 F.2d 517, 519 (3d Cir. 1981)).

17

Finally, a party who seeks to resist a summary judgment motion must also comply with Local Rule 56.1, which specifically directs a party opposing a motion for summary judgment to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade his litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. See Sanders v. Beard, No. 09-CV-1384, 2010 U.S. Dist. LEXIS, *15 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders and the local rules of court"); Thomas v. Norris, No. 02-CV-01854, 2006 U.S. Dist. LEXIS 64347, *11 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure). Under the local rules, the failure to follow these instructions and appropriately challenge the material facts tendered by the defendant means that those facts must be deemed, since:

> A failure to file a counter-statement equates to an admission of all the facts set forth in the movant's statement. This Local Rule serves several purposes. First, it is designed to aid the Court in its determination of whether any genuine issue of material fact is in dispute. Second, it affixes the burden imposed by Federal Rule of Civil Procedure 56(e), as

recognized in <u>Celotex Corp. v. Catrett</u>, on the nonmoving party 'to go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, *designated specific facts showing that there is a genuine issue for trial*.' 477 U.S. 317, 324 (1986) (internal quotations omitted) (emphasis added). Despite the clear language of the rule, the important purposes it serves, and the voluminous record in this case, [p]laintiff has not submitted the requisite counter-statement. All facts included in [d]efendant's statement must therefore be deemed admitted.

<u>Doe v. Winter</u>, No. 04-CV-2170, 2007 U.S. Dist. LEXIS 25517, *2 n.2 (M.D. Pa. Apr. 5, 2007) (parallel citations omitted; court's emphasis).

### B.   **Many of Reish's Claims Are Time-Barred**

In this case we find, at the outset, that Reish's complaint runs afoul of a substantial procedural obstacle, since the discrimination and retaliation allegations that lie at the heart of this complaint fall beyond the statute of limitation and are now time-barred.  These allegations focus on the disciplinary actions taken by Penn State officials against Reish between July and September 2006.  It is this discipline, which led to Reich accepting a demotion, that constitutes the gist of Reish's claims in this litigation.

Yet, with respect to these pivotal claims, which entailed conduct which took place in the summer of 2006, it is entirely undisputed that Reish took no action for fifteen months, until he filed a charge of discrimination on December 21, 2007, with the EEOC. (Doc. 71-44 p. 6, Reish Dep. II, pp. 179-180)  Thus, approximately 460

19

days elapsed between these events and Reish's initial filing with the EEOC.  This

delay now has substantive significance for Reish since it is well-settled that a

complaint under the ADEA must be filed with the EEOC "within 300 days after the

alleged unlawful practice occurred." 29 U.S.C. §626(d)(1)(B).  Thus, "[t]o pursue an

employment discrimination claim under Title VII or the ADEA, an employee must

first file a charge with the EEOC within 300 days of an adverse employment action

or of notification to the employee of such an action." Lebofsky v. City of

Philadelphia, 394 F.App'x 935, 938 (3d Cir. 2010). See Snyder v. Baxter Healthcare,

Inc., 393 F.App'x 905, 908 (3d Cir. 2010)("In order to maintain an action under the

ADA or the ADEA, a Plaintiff is required to file a charge with the EEOC within 300

days of the allegedly unlawful practice.")  This 300-day limitations period, in turn,

"begins to run, at the time the employee receives notice of th[e adverse employment

action." Ruehl v. Viacom, Inc. 500 F.3d 375, 383 (3d Cir. 2007), citing Watson v.

Eastman Kodak Co., 235 F.3d 851, 852-53 (3d Cir.2000).  Therefore, in this case, to

the extent that Reish premises his discrimination and retaliation claims upon his

discipline and demotion in July and September of 2006, the 300 day administrative

filing deadline under ADEA began to run at that time. Id.  Furthermore, Reish's

parallel claims under the Pennsylvania Human Relations Act, 43 Pa.C.S. §951, are

subject to a similar, but even more exacting limitations period.  As to these pendant

20

state claims:  "the administrative charge must be filed by a complainant . . . within 180 days of the alleged discrimination." <u>Burgh v. Borough Council of Borough of Montrose</u>,  251 F.3d 465, 475 (3d Cir. 2001).

Here, it is undisputed that Reish did not file his administrative complaint until December 21, 2007, more than 460 days after the events that lie at the heart of this lawsuit.  Reish provides no excuse for this delay in filing that would justify tolling the statute of limitations, and we can discern no grounds for equitable tolling here. Therefore, a straightforward application of this limitations period bars consideration of Reish's claims relating to events in 2006, and would limit Reish to allegations which post-dated February 24, 2007.  With Reish's claims circumscribed in this fashion by the statute of limitations, it is apparent that none of Reish's employment discrimination claims can survive summary judgment.  These age discrimination and retaliation claims, which fail on summary judgment, are discussed separately below.

## C.    Reish's Age Discrimination Claims Fail As a Matter of Law

Reish has claimed that defendants discriminated against him on the basis of age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 <u>et</u> <u>seq</u>. ("ADEA").  "The ADEA prohibits employers from discriminating against individuals in hiring, discharge, compensation, term, conditions, or privileges of

employment on the basis of their age." Duffy v. Paper Magic Group, Inc., 265 F.3d 163, 167 (3d Cir. 2001) (citing 29 U.S.C. § 623(a)(1)).  In cases, such as this, where a plaintiff alleges disparate treatment under the ADEA, liability hinges on whether the plaintiff's age motivated the employer's decision and had a determinative influence on the employment decision.  See Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 141 (2000).  Age discrimination may be established by direct or indirect evidence.  Id. (citation omitted).  Under the ADEA, the parties' burdens in establishing and defending claims by indirect evidence are determined by the procedure set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000).

Under the McDonnell Douglas framework, a plaintiff must initially produce evidence sufficient to convince a reasonable factfinder as to all of the elements of a prima facie case of discrimination.  Stanziale, 200 F.3d at 105.  This test requires that a plaintiff first come forward with evidence to show: (1) the plaintiff is 40 years old or older at the time of the allegedly discriminatory action; (2) the defendant took an adverse employment action against the plaintiff; (3) the plaintiff was qualified for the position in question; and (4) the plaintiff was replaced by another employee who was sufficiently younger so as to support an inference of discriminatory animus.  Smith v. City of Allentown, 589 F.3d 684, 689 (3d Cir. 2009).

22

In this case, Reish attempts to carry this burden of proof, in part, by referring to treatment afforded other Penn State employees. While such discrimination can be shown through disparate treatment of similarly situated workers, to be considered similarly situated the "employees must be similarly situated in all relevant respects," taking into account factors such as the "employees' job responsibilities, the supervisors and decision makers, and the nature of the misconduct engaged in." See Wilcher v. Postmaster Gen. App. A. No. 10-3075,2011 WL 3468322, at *2 (3d Cir. Aug. 9, 2011) (citing Russell v. University of Toledo, 537 F.3d. 596 (6th Cir. 2008); Lee v. Kansas City S. Ry. Co., 574 F.3d 253,259-61 (5th Cir. 2009). As this Court has observed, "In order for employees to be deemed similarly situated, ... the individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." Ogden v. Keystone Residence, 226 F.Supp.2d 588, 603 (M.D. Pa. 2002).

If a plaintiff establishes a *prima facie* case, "the burden of production (but not the burden of persuasion) shifts to the defendant, who must then offer evidence that is sufficient, if believed, to support a finding that the defendant had a legitimate, nondiscriminatory reason for the adverse employment decision." Stanziale, 200 F.3d

23

at 105 (citations and internal alterations omitted).   "If a defendant satisfies this burden, a plaintiff may then survive summary judgment by submitting evidence from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Id.; see also Torre, 42 F.3d at 830 (noting that to survive summary judgment, "a plaintiff may prevail 'by either (I) discrediting the [employer's] proffered reasons, either circumstantially or directly, or (ii) adducing evidence, whether circumstantial or direct, that discrimination was more likely than not a motivating or determinative cause of the adverse employment action'" (quoting Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994)).

The Third Circuit has explained what a plaintiff must show in order to discredit an employer's proffered legitimate, non-discriminatory reason for taking an adverse employment action, as follows:

> [T]he plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent.  Rather, the non-moving plaintiff must demonstrate such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for the asserted non-discriminatory reasons.

24

Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994).  In considering the parties'

competing arguments and evidentiary support, we must remain mindful that "[t]he

question is not whether the employer made the best, or even a sound, business

decision; it is whether the real reason is [discrimination]."  Keller v. Orix Credit

Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997).

Judged against these standards, we find that Reish simply has failed to carry

his burden of proof on this age discrimination claim, particularly when the time-

barred aspects of these claims are excluded.  Accepting that Reish's age is sufficient

to trigger ADEA analysis, we find that Reish has not shown that there are disputed

material issues of fact which support his assertions that Penn State officials took

actions against him with the intent to discriminate against him due to his age.  As we

have noted, the principal acts about which Reish complains are time-barred.

Moreover, the record in this case is replete with evidence which shows that Penn

State officials were motivated by work performance problems, problems that are

largely conceded by Reish, when they disciplined and demoted him.  These

thoroughly documented job performance issues–which are essentially uncontested by

Reish–both wholly undermine Reish's *prima facie* showing of discrimination, and

persuasively demonstrates that "the defendant had a legitimate, nondiscriminatory

reason for the adverse employment decision." <u>Stanziale</u>, 200 F.3d at 105. Therefore, the undisputed existence of these job performance concerns is fatal to the success of Reish's discrimination claim.

Reish's efforts to rely upon the defendants' treatment of other workers to prove age discrimination are also unavailing. To be considered similarly situated the "employees must be similarly situated in all relevant respects," taking into account factors such as the "employees' job responsibilities, the supervisors and decision makers, and the nature of the misconduct engaged in." <u>See</u> <u>Wilcher v. Postmaster Gen.</u>, App. A. No. 10-3075, 2011 WL 3468322, at *2 (3d Cir. Aug. 9, 2011) (<u>citing</u> <u>Russell v. University of Toledo</u>, 537 F.3d. 596 (6th Cir. 2008); <u>Lee v. Kansas City S. Ry. Co.</u>, 574 F.3d 253, 259-61 (5th Cir. 2009). Here, the defendants have shown that the employees to whom Reish seeks to be compared are quite dissimilar from the plaintiff in terms of their ages, job duties, employment responsibilities, and workplace discipline records. (Doc. 71-19, ¶¶49-67) Thus, there is simply no basis for finding that "the individuals with whom the plaintiff seeks to compare [his] treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it,"

26

Ogden v. Keystone Residence, 226 F.Supp.2d 588, 603 (M.D. Pa. 2002), the legal benchmark for such proof.  This argument, therefore, fails.

Nor can Reish save this discrimination claim by simply citing to the remarks which he allegedly attributed to defendant Andersen in March of 2005, commenting upon the age of another worker.  Such stray remarks are insufficient to carry the plaintiff's burden of proof, particularly where the remarks are separated from any alleged acts of discrimination by 18 months, there are intervening job performance issues, "the comments were neither physically threatening nor humiliating, and [the plaintiff] has not shown how the comments affected h[is] work performance.  See also Racicot v. Wal-Mart Stores, Inc., 414 F.3d 675, 678 (7th Cir.2005) (isolated comments about Racicot's age such that she 'shouldn't be working at [her] age' were not pervasive enough to create an objectively hostile work environment)." Whitesell v. Dobson Communication, 353 F.App'x 715, 717 (3d Cir. 2009)(affirming summary judgment). See Reynolds v. Dep't of Army, No. 08-2944, 2010 WL 2674045 (D.N.J. June 30, 2010)(granting summary judgment).

In sum, Reish's discrimination claim is largely time-barred, and is legally insufficient given the failure of Reish to cite disparate treatment of truly comparable employees, and the substantial and uncontested evidence which demonstrates that the defendants "had a legitimate, nondiscriminatory reason for the adverse employment

decision." Stanziale, 200 F.3d at 105. Therefore, this discrimination claim fails and should be dismissed.

### D.    Reish's Retaliation and Hostile Workplace Claims Also Fail

Furthermore, Reish's retaliation claim also fails as a matter of law.

At the outset, we note that any retaliation claim based upon temporally remote events in the summer of 2006 is barred under the statute of limitations due to Reish's failure to timely pursue administrative claims until December, 2007. See, e.g., Lebofsky v. City of Philadelphia, 394 F. App'x 935, 938 (3d Cir. 2010); Snyder v. Baxter Healthcare, Inc., 393 F. App'x 905, 908 (3d Cir. 2010)("In order to maintain an action under the ADA or the ADEA, a plaintiff is required to file a charge with the EEOC within 300 days of the allegedly unlawful practice.")

When these time-barred claims are excluded, Reish's remaining assertions fail to rise to the level of actionable workplace retaliation. In retaliation cases, courts apply the McDonnell Douglas burden-shifting analysis. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-804 (1973). To establish a *prima facie* case of retaliation a plaintiff must demonstrate that: (1) he engaged in protected activity; (2) his employer took an adverse employment action after or contemporaneous with his protected activity; and (3) a causal link exists between the protected activity and the

employer's adverse action.  Cardenas v. Massey, 269 F.3d 251, 263 (3d Cir. 2001); Farrell v. Planters Lifesavers Co., 206 F.3d 271, 279 (3d Cir. 2000).

If an employee can establish a *prima facie* case, the employer must articulate a permissible reason for taking the adverse employment action.  See, e.g., Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997).  At this stage, the employer's burden is "relatively light; it is satisfied if the [employer] articulates any legitimate reason for the [adverse employment action]; the [employer] need not prove that the articulated reason actually motivated the [action]."  Id. (quoting Woodson v. Scott Paper, 109 F.3d 913, 920 n.2 (3d Cir. 1997).  If the employer carries its burden of articulating a legitimate basis for taking the adverse action, the burden returns to the employee to establish by a preponderance of the evidence that the employer's purportedly legitimate reason is, in fact, pretextual.  Id.  In order to show that an employer's proffered reason is pretextual, a plaintiff "must point to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action."  Fuentes v. Perskie, 32 F.3d 759, 764 (3d Cir. 1994).  Notably, this is a "difficult burden on the plaintiff."  Kautz v. Met-Pro Corp., 412 F.3d 463, 467 (3d Cir. 2005) (internal quotation marks omitted).  The

29

Third Circuit has explained that in order to satisfy this burden of proving pretext, a plaintiff "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable fact finder could rationally find them unworthy of credence." Jones, 198 F.3d at 413.   In considering the parties' competing arguments and evidentiary support, we must remain mindful that "[t]he question is not whether the employer made the best, or even a sound, business decision; it is whether the real reason is [discrimination]." Keller v. Orix Credit Alliance, 130 F.3d 1101, 1109 (3d Cir. 1997).

Moreover, when assessing the legal sufficiency of a retaliation claim one factual matter that courts are cautioned to consider is the temporal proximity between the plaintiff's protected conduct, and the allegedly discriminatory or retaliatory actions of the defendant.  In a civil rights context, it is recognized that such temporal proximity can, in appropriate cases, "be probative of causation." Thomas v. Town of Hammonton, 351 F.33d 108, 114 (3d Cir. 2003)(citing, Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001))  However, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close,' O'Neal v. Ferguson Constr.

Co., 237 F.3d 1248, 1253 (C.A.10 2001).  See, e.g., Richmond v. ONEOK, Inc., 120

F.3d 205, 209 (C.A.10 1997) (3-month period insufficient); Hughes v. Derwinski,

967 F.2d 1168, 1174-1175 (C.A.7 1992)( 4-month period insufficient)."  Clark

County School Dist. v. Breeden, 532 U.S. 268, 273-74 (2001).

To establish this third, and crucial, component to a retaliation claim, causation,

a plaintiff must make an exacting showing.  In this setting:

> To establish the requisite causal connection a plaintiff usually must
> prove either (1) an unusually suggestive temporal proximity between the
> protected activity and the allegedly retaliatory action, or (2) a pattern of
> antagonism coupled with timing to establish a causal link. See Krouse
> v. American Sterilizer Co., 126 F.3d 494, 503-04 (3d Cir.1997);
> Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir.1997).  In
> the absence of that proof the plaintiff must show that from the "evidence
> gleaned from the record as a whole" the trier of the fact should infer
> causation. Farrell v. Planters Lifesavers Co., 206 F.3d 271, 281 (3d
> Cir.2000).

Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007).

Thus:

> To establish the causation element of a retaliation claim, a plaintiff must
> prove that his or her participation in a protected activity motivated the
> defendant to perform the retaliatory act. Ambrose v. Twp. of Robinson,
> 303 F.3d 488, 493 (3d Cir.2002); Meenan v. Harrison, Civ. A. No. 3:03-
> CV-1300, 2006 WL 1000032, at *4 (M.D.Pa. Apr.13, 2006) (observing
> that a plaintiff must demonstrate that the exercise of First Amendment
> rights "played some substantial role" in the defendant's action). The
> temporal proximity of a retaliatory act to a plaintiff's exercise of his or

her First Amendment rights is probative, but not dispositive, of the causation element. <u>Estate of Smith v. Marasco</u>, 318 F.3d 497, 512 (3d Cir.2003); <u>see also</u> <u>Kachmar v. Sungard Data Sys., Inc</u>., 109 F.3d 173, 178 (3d Cir.1997) (stating that "temporal proximity merely provides an evidentiary basis from which an inference can be drawn"). For temporal proximity alone to establish causation, the "timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." <u>Marasco</u>, 318 F.3d at 512 (quoting <u>Krouse v. Am. Sterilizer Co.</u>, 126 F.3d 494, 503 (3d Cir.1997)) . . . [T]he Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation, <u>see</u> <u>Farrell v. Planters Lifesavers Co.</u>, 206 F.3d 271, 279 & n. 5 (3d Cir.2000), whereas a temporal proximity of ten days is sufficient to establish causation only when accompanied by other evidence of . . . wrongdoing, <u>Shellenberger v. Summit Bancorp, Inc.</u>, 318 F.3d 183, 189 (3d Cir.2003). This suggests that the temporal proximity must be measured in days, rather than in weeks or months, to suggest causation without corroborative evidence.

<u>Conklin v. Warrington Tp.</u>, No. 06-2245, 2009 WL 1227950, *3 (M.D.Pa. April 30, 2009).

Applying this standard, courts in civil rights cases have frequently rebuffed speculative efforts to infer causation from temporal proximity when a span of weeks or months separated the plaintiff's constitutionally protected conduct from the defendants' alleged acts of retaliation. Thus, "[o]ur sister courts have held that a temporal proximity of as little as seventeen days was insufficient to establish causation. <u>See</u> <u>Killen v. N.W. Human Servs., Inc.</u>, No. 06-4100, 2007 WL 2684541, at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was

insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa. Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation); Mar v. City of McKeesport, No. 05-19, 2007 WL 2769718, at *4 (W.D.Pa. Sept.20, 2007) (holding that temporal proximity of three months was insufficient to establish causation)." Fischer v. Transue, 04-2756, 2008 WL 3981521, *10 (M.D.Pa. Aug. 22, 2008)(holding that temporal proximity of three weeks was insufficient to establish causation).  Further, in the case of claims for retaliation, the Third Circuit has found that although temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation, Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001), where intervening acts occur that serve to support the employer's adverse employment action, temporal proximity may be rendered insufficient to establish causation.  Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003); see also Ober v. Miller, No. 1:04-CV-1669, 2007 U.S. Dist. LEXIS 93236, 2007 WL 4443256, at *12 (M.D. Pa. Dec. 18, 2007).

These principles apply here, and coupled with the bar of the statute of limitations, are fatal to Reish's retaliation claim.  Indeed, when time-barred matters are excluded, that claim rests upon the thinnest of reeds, Reish's assertion that he was

33

not permitted to attend a former colleague's party in the Fall of 2007. Thus, the chronology of the retaliation claim alleged by Reish endeavors to link three events separated by years–Anderson's alleged remarks regarding William Sotter, which Reish claims are made in March 2005, Sotter's 2006 age discrimination claim, and Reish's exclusion from an office party in the Fall of 2007–in a single, seamless retaliation scheme. However, these event, which are separated in time by years, and bear no other logical, legal or factual connection to one another, simply do not permit a legitimate inference of retaliation, and Reish has developed no other proof to support this retaliation claim. See Killen v. N.W. Human Servs., Inc., No. 06-4100, 2007 WL 2684541, at *8 (E.D.Pa. Sept.7, 2007) (holding that temporal proximity of seventeen days was insufficient to establish causation); see also Farrell, 206 F.3d at 279 n. 6 (suggesting that temporal proximity of seven weeks would be insufficient to establish causation); Smith v. ABF Freight Sys., Inc., No. 04-2231, 2007 WL 3231969, at *11 (M.D.Pa. Oct.29, 2007) (holding that temporal proximity of one and one-half months was insufficient to establish causation). Therefore, that claim fails.

In any event, as we have previously noted, Penn State has carried its burden of articulating a permissible reason for taking the adverse employment action. See, e.g., Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). As we have observed, the employer's burden is "relatively light; it is satisfied if the [employer]

34

articulates any legitimate reason for the [adverse employment action]; the [employer] need not prove that the articulated reason actually motivated the [action]." Id. (quoting Woodson v. Scott Paper, 109 F.3d 913, 920 n.2 (3d Cir. 1997). Plainly, Penn State has met this burden by detailing Reish's substantial job performance issues, problems which culminated with an apparent lack of candor by Reish regarding his compliance with University policies and his handling of excess property under his control. Once Penn State carried its burden of articulating a legitimate basis for taking the adverse action, the burden then returned to Reish to establish by a preponderance of the evidence that the employer's purportedly legitimate reason was, in fact, pretextual. Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997). In this case, we believe that Reish's failure to refute these proffered legitimate reasons for his discipline is also fatal to his retaliation claims. See Jones, 198 F.3d at 414 (plaintiff presented no evidence from which a jury could conclude that articulated reasons for its adverse employment actions were a pretext for discrimination); Lindsay v. The Pennsylvania State Univ., No. 06-CV-01826, 2009 U.S. Dist. LEXIS 18839, *15-16, *37-38 (M.D. Pa. Mar. 11, 2009) (finding defendant entitled to summary judgment in a Title VII action where plaintiff could not produce sufficient evidence of pretext to rebut the asserted nondiscriminatory reasons for the employment decision).

These same considerations apply to any hostile workplace claim made by Reish, and call for dismissal of those claims as well.  As a threshold matter, in this setting, workplace conduct is actionable only when "the workplace is permeated with 'discriminatory intimidation, ridicule, and insult,' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" <u>Harris v. Forklift Systems, Inc.</u>, 510 U.S. 17, 21 (1993).

Thus:

> Workplace conduct is not measured in isolation; instead, "whether an environment is sufficiently hostile or abusive" must be judged "by 'looking at all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.' " <u>Faragher v. Boca Raton, supra</u>, at 787-788, 118 S.Ct. 2275 . . . . Hence, "[a] recurring point in [our] opinions is that simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.' "

<u>Clark County School Dist. v. Breeden</u>, 532 U.S. 268, 270-71(2001)(citations omitted).

Judged against these standards, workplace conduct like that alleged here– which consisted of isolated remarks coupled with disparate episodes of employee discipline spanning several years, simply is insufficient as a matter of law to sustain a hostile workplace claim.  <u>See</u> <u>Whitesell v. Dobson Communication</u>, 353 F. App'x

715, 717 (3d Cir. 2009)(affirming summary judgment).[2] In short, these claims suffer

from the same flaws as Reish's discrimination claim; they are largely time-barred;

they fail to meet the plaintiff's *prima facie* burden of proof; and they wholly fail to

rebut the valid and substantial business justification proffered by the defendants for

their actions.  Therefore, these claims should also be dismissed.[3]

---

[2]Furthermore, to the extent that Reish is alleging that the proximity between his discipline in the summer of 2006, and the submission of an age discrimination claim by a co-worker, William Sotter, in the summer of 2006 independently supports a circumstantially proven retaliation claim, we note, first, that this independent claim is time barred. In addition, a close examination of the chronology of events refutes Reish's claim. The undisputed facts show that disciplinary action decisions were made at Penn State on June 19, 2006, after Reish's superiors discovered that he had not been complying with policies relating to excess property, and had misled his supervisors regarding this non-compliance. It is further undisputed that Mr. Sotter's allegations were made after June 19, 2006. Therefore, since the decision to discipline Reish pre-dated the disclosure of any arguably projected activity, the element of causation which is necessary to any circumstantially proven  retaliation claim simply fails here. Thomas v. Town of Hammonton, 351 F.3d 108, 114 (3d Cir. 2003); see also Ober v. Miller, No. 1:04-CV-1669, 2007 U.S. Dist. LEXIS 93236, 2007 WL 4443256, at *12 (M.D. Pa. Dec. 18, 2007).

[3]We note that, on occasion, Reish also asserted new factual matters in his briefs, factual assertions not contained in his complaint, in the course of resisting this summary judgment motion. It is well-settled that a plaintiff cannot amend a complaint through the filing of a brief, or through arguments set forth in a brief opposing a dispositive motion.  Indeed, "[i]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." Pennsylvania ex rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988) (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1107 (7th Cir. 1984)); cf. Frederico v. Home Depot, 507 F.3d 188, 202 (3d Cir. 2007) ("[W]e do not consider after-the-fact allegations in determining the sufficiency of [a] complaint

### E.   Reish's Claim Under Pennsylvania's Wage Payment and Collection Law Should Be Dismissed

Finally, Reish's complaint contains a pendant state law claim under Pennsylvania's Wage Payment and Collection Law, 43 Pa.C.S. §260.9a, *et seq*. (Doc. 1)  The defendants have moved for summary judgment on this claim, arguing that the act does not create a right to compensation, but rather only allows employees to collect unpaid wages.  According to the defendants, a determination of what wages are due, owing and unpaid is based upon the employee's employment agreement, Harding v. Duquesne Light Co., 882 F.Supp. 793, 801 (W.D. Pa. 1995), and in this case defendants contend that no moneys are owed to Reish under his employment agreement with Penn State.  Reish has not disputed this argument in any fashion on summary judgment.  Therefore, " Plaintiff's failure to respond to arguments raised on summary judgment effectively constitutes an abandonment of these causes of action and essentially acts as a waiver of these issues.  Adams v. Pennsylvania,, 2009 WL 2707601, *8 (M.D.Pa.2009)." Skirpan v. Pinnacle Health Hospitals,  07-1703, 2010 WL 3632536, 7 (M.D.Pa. April 21, 2010).

---

under Rules 9(b) and 12(b)(6).").

In any event, the dismissal of Reish's federal statutory claims dictates the appropriate course for the Court to follow in addressing this ancillary state claim.  In a case such as this, where the jurisdiction of the federal court was premised on an alleged federal civil rights violation which is found not to state a cause of action upon which relief can be granted, the proper course is for 'the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims.  28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if-... the district court has dismissed all claims over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S. 715, 726 (1966) (holding that when federal causes of action are dismissed, federal courts should not separately entertain pendent state claims)." Bronson v. White  No. 05-2150, 2007 WL 3033865, *13 (M.D.Pa. Oct. 15, 2007)(dismissing ancillary malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d Cir. 2008)("Because the District Court appropriately dismissed [the inmate's] Bivens claims, no independent basis for federal jurisdiction remains.  In addition, the District Court did not abuse its discretion in declining to address the state law . . .  claims. 28 U.S.C. § 1367(c)(3); see United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Tully v. Mott Supermkts., Inc., 540 F.2d 187, 196 (3d Cir.1976).")

## III.   Recommendation

For the forgoing reasons, IT IS RECOMMENDED THAT defendants' motion for summary judgment (Doc. 70) be GRANTED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of March 2012.

*S/Martin C.  Carlson*

Martin C. Carlson
United States Magistrate Judge